

# THE ATTORNEY GENERAL
## OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

*Withdrawn after issuance*

March 18, 1969

Honorable Tommy V. Smith
Commissioner
Bureau of Labor Statistics
State of Texas
Capitol Station
Austin, Texas   78711

Opinion No. M-363

Re: Whether under federal law
Article 5172a, V.C.S., con-
flicts with Title VII, Civil
Rights Act of 1964, and is
invalid.

Dear Mr. Smith:

You have requested an opinion of this office as to whether the following statute, Article 5172a, Vernon's Civil Statutes, is invalid by reason of Title VII of the Civil Rights Act of 1964.

Vernon's Civil Statutes, Article 5172a

### SUMMARY OF ARTICLE 5172a

Sections 1 through 3 limit the number of hours that a female can work to 9 hours in a twenty-four (24) hour period, or one day period, or 54 hours in a one week period, for certain types of industries and businesses within the State. Sections 2 and 3 provide for overtime pay.

Section 4 makes it mandatory for the employers mentioned in Sections 1 thru 3 to provide seats for female employees when not engaged in the active duties of their employment.

Section 5 sets out the types of female employment that are excepted from Sections 1 through 4. Part 6 of Section 5 establishes the number of hours that female employees in banks can work in one day or one week.

Sections 5a and 6 set out exceptions and exemptions to Sections 1 through 5 in case of extraordinary emergencies, war, or national emergencies. Sections 7 through 13 deal with hearings under Sections 5a and 6, failure to comply with the Act, and punishment for violations of the Act.

- 1789 -

The pertinent parts of the 1964 Civil Rights Act which prohibit discrimination because of sex are found in 42 U.S.C.A., Section 2000e-2, and read as follows:

"(a)   It shall be an unlawful employment practice for an employer ----

(1)   to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin; or

(2)   to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

Before any opinion can be given, it is first necessary to look to the history and purpose of Article 5172a.  In the early part of the 20th Century many states including Texas passed legislation to protect female employees.  Because prior to the passage of these "female protection laws" some employers had exploited both female and child employees with little regard to the health or well being of such employees. There are many cases that have upheld this type of protective legislation.  For example, see Miller v. Wilson, 236 U.S. 373, 35 S.Ct. 342, 59 L.Ed. 628 (1915); Muller v. State of Oregon, 208 U.S. 412, 28 S.Ct. 324, 52 L.Ed. 551 (1908).

In Muller, supra, the Court said on page 422,

". . .Even though all restrictions on political, personal and contractual rights were taken away, and she stood, so far as statutes are concerned, upon an absolutely equal plane with him, it would still be true that she is so constituted that she will rest upon and look to him for protection; that her physical structure and a proper discharge of her maternal functions -- having in view not merely her own health, but the well-being of the race -- justify legislation to protect her from the greed as well as the passion of man."

In Mengelkoch v. Industrial Welfare Commission, 284 Fed.Supp. 950 (Cal. Dist. 1968), also 284 Fed.Supp. 956 (Cal. Dist. 1968), it was held that where there are prior United States Supreme Court decisions upholding state statutes such as Article 5172a and no subsequent decisions have overruled these previous decisions, it is improper to test constitutionality of such statutes by a three-judge Federal Court. It was reasoned that a Supreme Court decision is as binding as statutory law and it was held that the court was without jurisdiction to decide whether California's statute (Section 1350 of the California Labor Code, which prohibits women from working more than eight (8) hours a day or more than forty-eight (48) hours a week) had been pre-empted by the Civil Rights Act. The basis of the holding was that the Plaintiff had failed to raise a substantial constitutional issue under the Equal Protection Clause of the United States Constitution. The Court nonetheless contributed some pertinent judicial dicta on page 954, as follows:

> "On the other hand, this may depend upon the character of the employment. The classification of women as a group needing some particular protection of the law may still be reasonable for many purposes. It has also been pointed out that the abandonment of limitations on working hours for women would place women on an equal basis with men in the matter of overtime pay, but at the same time would also make them subject to the obligation to perform as much overtime work as required of men. This is a mixed blessing. It is not a matter of letting women earn overtime when they want to, but an obligation to work overtime whether they want to or not on pain of being discharged. This could result in women being squeezed out of certain industrial work rather than broadening the employment base and opportunity for women in industry. It is not so certain as plaintiffs assume that their position represents the will of many other women, even if similarly situated.

> "Plaintiffs have not distinguished the issue presented from the one presented in Muller v. Oregon, supra. The principle of stare decisis

must ultimately control the decision at the district court level. A Supreme Court decision is as binding as statutory law. The district court, even sitting as a three-judge tribunal, cannot reverse the Supreme Court. When the law has developed through intervening decisions to the point that it has become clear that the Supreme Court has abandoned the reasoning which gave rise to an earlier decision and that the law has in fact changed and all that is needed is recognition, then an inferior court should recognize what is obvious and act accordingly. However, there has been no line of decisions which cast doubt upon the basic holding of <u>Muller</u>. Therefore, this case does not present a substantial constitutional issue. Mere speculation as to what the Supreme Court might do in the light of the changed circumstances will not suffice to take this issue out of the insubstantial category."

The foregoing decision was appealed directly to the United States Supreme Court. See 21 L.Ed. 2d 215, 89 S.Ct. ____. Here the Court held that it had no jurisdiction to entertain a direct appeal from the decision of a single judge, and when a three-judge court dissolves itself for want of jurisdiction, an appeal lies to the appropriate Court of Appeals and not to the Supreme Court. On page 216 the Court said,

> "A three-judge federal court convened pursuant to 28 USC §2281, determined that 'there is no jurisdiction for a three-judge court' and entered an order dissolving itself. ____ F.Supp. ____, ____. The single district judge in whose court the case was originally filed considered further and dismissed the case without prejudice under the doctrine of abstention, stating in his memorandum opinion that '[t]he order dissolving the three-judge court is incorporated in this memorandum by reference.' ____ F.Supp. ____, ____. Appellant appeals from both judgments. In these circumstances, we have no jurisdiction to entertain a direct appeal from the decision of the single judge; such jurisdiction is possessed only by the appropriate United States Court of Appeals.

28 USC §1291. Moreover, we have held that when, as here, a three-judge court dissolves itself for want of jurisdiction, an appeal lies to the appropriate Court of Appeals and not to this Court. Wilson v. Port Lavaca, 391 U.S. 352, 20 L.Ed. 2d 636, 88 S.Ct. 1502.

"Although the appellants have lodged in the Court of Appeals for the Ninth Circuit a protective appeal from the decision of the single judge, it does not appear from the record that such an appeal has been filed with respect to the three-judge order. Therefore, we vacate the order of the three-judge court and remand the case to the District Court so that a timely appeal may be taken to the Court of Appeals. See Wilson v. Port Lavaca, supra; Utility Comm'n v. Pennsylvania R. Co., 382 U.S. 281, 282, 15 L.Ed. 2d 324, 325, 86 S.Ct. 423. The appeal from the decision of the single judge is dismissed for want of jurisdiction.

"It is so ordered."

The case is now on appeal to the United States Court of Appeals, Ninth Circuit.

The only other recent case we have found dealing with this problem is Rosenfeld v. Southern Pacific Co, ____ F.Supp. ____, 59 L.C. ____ 9172, 69 LRRM 2822 (C.D. Calif. Civil No. 67-1377-F, Nov. 22, 1968). Here the Court held that the same California statute, Section 1350 of the California Labor Code, which prohibits female employees from working more than eight (8) hours per day or forty-eight (48) hours per week does not constitute a bona fide occupational qualification within the meaning of the 1964 Civil Rights Act. The Court also held that the California hours and weights legislation discriminates against women on account of sex, which violates the provisions of the Civil Rights Act of 1964. The court concluded such legislation is contrary to the Supremacy Clause (Article VI, Clause 2) of the United States Constitution and therefore, is void, and of no force or effect. No cases are cited in this opinion, and the decision is presently being appealed to the United States Court of Appeals, 9th Circuit. The opinion is contrary to all previous United States Supreme Court cases in this field which have upheld state legislation passed to protect female employees.

We are not bound by the decision of a United States District Court in another jurisdiction, and under the circumstances shown we must uphold the constitutionality of the Texas statute if under any reasonable construction a court may so uphold it.

It is fair to assume that Congress would not have included Title 42 U.S.C., Section 2000h-4, had it intended to pre-empt such state legislation. The federal statutory provision states:

"Construction of provisions not to exclude operation of State laws and not to invalidate consistent State laws

"Nothing contained in any title of this Act shall be construed as indicating an intent on the part of Congress to occupy the field in which any such title operates to the exclusion of State laws on the same subject matter; nor shall any provision of this Act be construed as invalidating any provision of State law unless such provision is inconsistent with any of the purposes of this Act, or any provision thereof. Pub.L. 88-352, Title XI, § 1104, July 2, 1964, 78 Stat. 268."

We also find that the General Counsel for Equal Employment Opportunity Commission charged with investigating complaints filed under the 1964 Civil Rights Act, in an opinion released on April 28, 1967 said:

"Effect of Title VII on federal overtime limitation.

"Title VII does not repeal by implication existing federal laws concerning employment of women or authorize employers to violate such laws. Consequently, federal law forbidding employers in the District of Columbia to employ women for more than eight hours a day is not in conflict with Title VII. However, employers should seek all available administrative exceptions to laws restricting employment opportunities for women.

"In your letter you state that the Minimum Wage and Industrial Safety Board of the District of Columbia has notified you that you may not work your female employees more than eight hours a day, although no such limitation is applicable to male employees. You ask if the Board's action is inconsistent with Title VII of the Civil Rights Act.

"The maximum hour limitation you refer to is imposed by act of Congress, D.C. Code, § 36-301. The Commission does not believe that Title VII was intended to repeal by implication existing federal laws regarding the employment of women, and, consequently, we do not believe that Title VII authorizes an employer to violate requirements imposed by such laws. However, the Commission does believe that to comply with Title VII an employer should seek whatever administrative exceptions may be available under such laws." See C.C.H. Employment Practices Guide, Paragraph 17,304.56.

If Congress did not intend to pre-empt federal laws regulating the maximum number of hours women can work in the District of Columbia, neither did Congress intend for the Civil Rights Act of 1964 to pre-empt similiar state laws designed to protect female employees by setting the maximum number of hours they may work.

Furthermore, in January, 1967, The Missouri Attorney General's office wrote an opinion on this problem and concluded that the 1964 Civil Rights Act had not pre-empted a Missouri statute very similiar to Article 5172a. See Missouri Attorney General's Opinion No. 45 (1967).

It is the opinion of this office that Article 5172a has not been shown by any binding authority to be invalid or to have been pre-empted by the federal Civil Rights Act of 1964. Under these circumstances we must hold that Article 5172a is valid and constitutional.

## SUMMARY

The Federal Civil Rights Act of 1964, which prohibits discrimination because of sex in employment, has not invalidated Article 5172a, V.C.S., which

prohibits female employees from working more than nine (9) hours per twenty-four (24) hour day or more than fifty-four (54) hours per week in certain industries.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Ronald Luna
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
George Kelton, Vice-Chairman
Monroe Clayton
Bob Lattimore
Charles Rose
Harold Kennedy

W.V. Geppert
Staff Legal Assistant